IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSE SYLVESTERE LOPEZ | § | |
| (TDCJ No. 1687670), | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | |
| | § | No. 3:14-cv-3691-B-BN |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Jose Sylvestere Lopez, a Texas inmate, has filed an application for

writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained below,

the application should be denied.

**Applicable Background**

Lopez was indicted for committing the first-degree felony of continuous sexual

abuse against a child under the age of 14, he pleaded not guilty and proceeded to trial,

where a jury found him guilty, and he was sentenced to life imprisonment. *See State

v. Lopez*, No. F-0913031-S (282d Dist. Ct., Dallas Cnty., Tex.).

Lopez's conviction and sentence were affirmed on appeal. *See Lopez v. State*, No.

05-11-01333-CR, 2013 WL 2145962 (Tex. App. – Dallas Jan. 3, 2013). And the Texas

Court of Criminal Appeals ("CCA") refused his petition for discretionary review. *See

Lopez v. State*, PD-0114-13 (Tex. Crim. App. May 15, 2013).

Lopez next filed a state habeas application, raising the same 15 grounds that he has raised in his federal habeas application. Those grounds, grouped categorically, are that he received constitutionally ineffective assistance of trial counsel; that, for multiple reasons, the prosecutor committed misconduct, which violated Lopez's due process rights; that the trial court committed numerous errors or abused its discretion; that he was denied due process when a witness knowingly used perjured testimony; and that there was "no evidence" to convict him of continuous sexual assault.

The CCA denied his state application without a written order on the findings of the trial court made without a live hearing. *See Ex parte Lopez*, WR-81,939-01 (Tex. Crim. App. Sept. 24, 2004) [Dkt. No. 11-16]; *see also* Dkt. No. 11-18 at 153-162 (trial court findings and conclusions with trial counsel's affidavit).

His federal habeas application was timely filed, a response has been filed, *see* Dkt. No. 12, but Lopez has failed to file a reply, and his time in which to do so has expired.

The following factual background is from the Dallas Court of Appeals's decision:

Complainant K.A. was three years old when her mother and appellant moved in together; she was six when they got married. K.A. testified that appellant, who she called "Dad," sexually assaulted her on numerous occasions beginning when she was six years old and continuing until the age of eight, when she first reported the abuse. K.A. testified that the assaults occurred "at least twice a month, if not more." Some of these assaults occurred at appellant's workplace – an auto repair shop.

During the guilt-innocence phase of the trial, appellant called his brother, Juan Jose Lopez, to testify for the defense. Juan testified that, as a sibling, he had known appellant his entire life, that appellant was his closest sibling, and that he had observed how appellant's family interacted. Defense counsel then asked, "[W]as [appellant] the kind of

person that would abuse children?" The witness responded, "No." During her cross-examination, when the prosecutor started to ask Juan whether he was aware "that there is an allegation," defense counsel objected under rule of evidence 404(b). In a hearing held outside the presence of the jury, the prosecutor asked Juan if he was aware appellant had been accused of grabbing the breasts of a fifteen year-old girl. Juan responded, "Yes." The prosecutor asked Juan what he knew about the allegations. He replied, "Just that Claudia told me. I don't know if there's any documentation to it or not. I don't know." Defense counsel objected on the basis of hearsay, rule of evidence 404(b), and that any probative value of the evidence was outweighed by its prejudicial effect under rule 403. The trial court overruled the objections on the basis that the evidence was being offered to rebut the witness's testimony that appellant was not the type of person who would abuse children. The court then conducted the rule 403 balancing test and determined the evidence was not unfairly prejudicial, and that it would not confuse the issues or mislead the jury, because it was being offered "to rebut a direct quote by this witness ... that the defendant is not the type of person who abuses children." After the jury returned to the courtroom, the prosecutor continued the cross-examination:

> Q. Mr. Lopez, it's your opinion that your brother is not the kind of person who would sexually abuse children; is that correct?
>
> A. Yes. Correct.
>
> Q. But isn't it also correct that you're aware of an accusation that your brother grabbed the breasts of a 15-year-old-girl; isn't that correct?
>
> A. Just from Claudia's words.

The trial court gave the jury a limiting instruction.1 On re-direct examination, defense counsel asked the witness, "Do you believe these allegations of Claudia?" He responded that he did not.

The State subsequently called the fifteen year-old girl referred to in the prosecutor's question, V.M., as a rebuttal witness. During a hearing held outside of the presence of the jury, defense counsel objected to the witness's testimony based on rule 404(b) and because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. The trial

court advised it had done a balancing test and overruled the objections. During V.M.'s testimony, the trial court admonished the jury that the evidence was not admissible to prove appellant's character or to show conformity with that character.

V.M. was a seventeen-year-old senior in high school at the time of trial. She testified that she was the sister of Claudia Lopez, appellant's wife, and that she was employed as a secretary in appellant's auto repair shop when she was sixteen years old. On Saturday, March 7, 2009, appellant came up behind her as she sat at her desk and massaged her shoulders. V.M. told appellant to stop, but he "just continue[d]." Appellant then started kissing V.M. on the cheek and rubbing her breasts. She ran to the bathroom and locked the door. She left the bathroom when she heard the telephone ring. The telephone call was from V.M.'s mother, and V.M. immediately told her what happened. V.M.'s father picked her up from the shop approximately five minutes later. V.M.'s father went inside the shop and confronted appellant, but appellant "didn't say anything." "[H]e was just sitting down shaking," according to V.M. She has not seen appellant since that time.

*Lopez*, 2013 WL 2145962, at *1-*2 (footnote omitted).

## Legal Standards

Where a state court has already rejected a claim on the merits, a federal court

may grant habeas relief on that claim only if the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under

Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.,*

*Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA

on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists

could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. ___, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court

adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th

Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

## Analysis

### Procedural Bar [Grounds 9, 11, & 15]

A federal court will not reach the merits of claims denied by a state court on state procedural grounds if the state-law grounds are independent of the federal claim and adequate to bar federal review. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *modified by Martinez v. Ryan*, 132 S. Ct. 1309, 1315, 1316-19 (2012). But, if the state procedural determination is based on state grounds that were inadequate to bar federal habeas review, or if the habeas petitioner shows than an exception to the bar applies, the federal court must resolve the claim without the deference that AEDPA otherwise requires. *See Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010) (AEDPA's deferential standard of review would not apply to a procedural decision of the state court); *Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000) ("Review is *de novo* when there has been no clear adjudication on the merits." (citing *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997))); *Mercadel v.*

*Cain*, 179 F.3d 271, 274-75 (5th Cir. 1999) ("the AEDPA deference scheme outlined in 28 U.S.C. § 2254(d) does not apply" to claims not adjudicated on the merits by the state court).

Lopez advanced several claims in his state habeas application, repeated virtually verbatim in his Section 2254 habeas application, that the state habeas court found to be procedurally barred. *See* Dkt. No. 11-18 at 158-59 ("[T]his claim could have been, but was not, raised on direct appeal. Therefore it is procedurally barred." "The Court finds that Applicant's assertion that he was prosecuted under the wrong statute should have been raised on direct appeal. Because it was not, he is procedurally barred from asserting it on habeas." "The Court finds that Applicant's challenge to the sufficiency of the evidence is not cognizable on habeas. To the extent Applicant asserts there is no evidence to support the conviction, the record is not devoid of evidentiary support for the conviction.").

A federal court may not consider the merits of a habeas claim where a state court has denied relief due to a procedural default, *see Sawyer*, 505 U.S. at 338, if the state court opinion contains a "plain statement" that its decision rests on adequate and independent state grounds, *see Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *see also Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006) ("A federal habeas court 'will not consider a claim that the last state court rejected on the basis of an adequate and independent state procedural ground.'" (quoting *Busby*, 359 F.3d at 718)). But, to be an adequate ground for denying relief, the state procedural rule must be strictly or regularly applied to similar claims. *See Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982);

*see also Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999).

As to Lopez's ninth ground for federal habeas relief – that the trial court erred by not granting his motion for a mistrial, *see* Dkt. No. 3 at 16 – the state habeas court noted that this ground could have been, but was not, raised on direct appeal, *see* Dkt. No. 11-18 at 158. Texas law provides that claims that could have been raised on direct appeal and that are presented for the first time on state collateral review are procedurally defaulted. *See Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996). The United States Court of Appeals for the Fifth Circuit has held that "'the *Gardner* rule set forth an adequate state ground capable of barring federal habeas review.'" *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005) (quoting *Busby*, 359 F.3d at 719). And Lopez has failed to establish cause and actual prejudice for this default or that failure to consider this claim now will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. This claim is therefore procedurally barred.

Turning to Lopez's eleventh ground for federal habeas relief, which essentially is that he was prosecuted under the wrong criminal statute, *see* Dkt. No. 3 at 18 ("The trial court erred by prosecuting him for continuous sexual abuse offense, rather than the offense of prohibited sexual conduct (incest)."), the state habeas court found that Lopez's "assertion that he was prosecuted under the wrong statute should have been raised on direct appeal" and that, "[b]ecause it was not, he is procedurally barred from asserting it on habeas," Dkt. No. 11-18 at 159. Thus, this claim is also procedurally barred under the *Gardner* rule because Lopez also has failed to establish cause and actual prejudice for this default or that failure to consider this claim now will result

in a fundamental miscarriage of justice.

Lopez's fifteenth ground for federal habeas relief is that there was "no evidence to convict [him] for continuous abuse." Dkt. No. 3 at 22. The state habeas court found that this "challenge to the sufficiency of the evidence is not cognizable on habeas" and that, "to the extent Applicant asserts there is no evidence to support the conviction, the record is not devoid of evidentiary support for the conviction." Dkt. No. 11-18 at 159.

As the state habeas court implied, a true claim of "no evidence" and a claim of "insufficient evidence" are not treated as the same on habeas review:

> Under Texas law, while an allegation of "no" evidence is cognizable in a state habeas proceeding, a sufficiency-of-the-evidence claim may only be raised on direct appeal and may not be raised in a state habeas proceeding. *See West v. Johnson*, 92 F.3d 1385, 1389 n.18 (5th Cir. 1996); *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004); *Clark v. Texas*, 788 F.2d 309, 310 (5th Cir. 1986); *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994). This procedural default in state court is an adequate state procedural ground barring federal habeas review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-07 (1991). Absent a showing of cause and prejudice or a miscarriage of justice, ... [a] legal insufficiency-of-the-evidence claim is [therefore] procedurally barred from this court's review.

*Bessire v. Quarterman*, No. 4:07-cv-597-Y, 2009 WL 54257, at *2 (N.D. Tex. Jan. 8, 2009); *cf. Mendoza v. Dretke*, No. 3:05-cv-42-K, 2005 WL 1124513, at *1 n.1 (N.D. Tex. May 11, 2005), *rec. adopted*, 2005 WL 1639330 (N.D. Tex. July 13, 2005) (a "sufficiency of the evidence [claim] cannot be litigated under the guise of a 'no evidence' claim" (citations omitted)).

This fifteenth ground is not truly a sufficiency-of-the-evidence claim, as Lopez acknowledges that there was some evidence – "the victim gave three different

testimonies to the police officer." Dkt. No. 3 at 22. Where a "petitioner tacitly concedes that there was some evidence to support his conviction," by, for example, claiming "that the state failed to present any physical evidence or eyewitness testimony to corroborate outcry statements made by the child victim," "[s]uch an argument implicates the sufficiency of the evidence." *Mendoza*, 2005 WL 1124513, at *1 n.1; *see Green v. Quarterman*, No. 4:06-cv-823-Y, 2008 WL 108791, at *5 (N.D. Tex. Jan. 10, 2008) ("Under Texas law, the testimony of a child sexual assault victim alone is sufficient evidence to support a conviction for indecency with a child." (citing TEX. CODE CRIM. PROC. art. 38.07; *Perez v. Texas*, 113 S.W.3d 819, 838 (Tex. App. – Austin 2003, pet. ref'd); *Tear v. Texas*, 74 S.W.3d 555, 560 (Tex. App. – Dallas 2002, pet. ref'd))).

And, because Lopez also fails to establish cause and actual prejudice for this default – his failure to raise this claim on direct appeal – or that failure to consider this claim now will result in a fundamental miscarriage of justice, *see Coleman*, 501 U.S. at 750, the Court is also barred from reviewing this ground for relief, *see Ylst*, 501 U.S. at 801-07; *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994); *see also Mendoza*, 2005 WL 1124513, at *1 ("[I]it is well-settled under Texas law that the sufficiency of the evidence cannot be attacked for the first time on state collateral review." (citing *Renz*; *Ex parte Adams*, 768 S.W.2d 281, 293 (Tex. Crim. App. 1989))).

Alleged Ineffective Assistance of Counsel [Grounds 1 & 2]

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("the proper

-12-

standard for evaluating [a] claim that appellate counsel was ineffective ... is that enunciated in *Strickland*" (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986))).

Under *Strickland*, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689)).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear

to be remote possibilities." *Harrington*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).

Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review Petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 134 S. Ct. at 17, 13)).

Lopez's two grounds for why his trial counsel was constitutionally ineffective are

first that counsel failed to advise him as to the advantages and disadvantages of taking a 25-year plea bargain and also that counsel failed "to file a motion for a preliminary hearing." Dkt. No. 3 at 7-8. Lopez first argues that his counsel told him there was no evidence against him and thus that it "is better for us to go ... to trial" and not take the plea bargain. *Id.* at 7. And Lopez asserts in his second ground that counsel should have requested, but failed to request, a "preliminary hearing," "a critical stage in preparing for trial." *Id.* at 8.

As to the first ground, the state habeas court obtained an affidavit from Lopez's trial counsel in which counsel testified that he "never told [Lopez] that there was no evidence against him but rather reviewed with him the evidence against him, the range of punishment and the consequence of being found guilty at trial" and that he "explained to [Lopez] that a jury trial was the only way he could be found 'Not Guilty' as the State of Texas refused to dismiss the case." Dkt. No. 11-18 at 161. The state court, in recommending that this ground be denied, then made the following findings:

> Counsel states that he reviewed the evidence "against him" with Applicant. He explained the range of punishment and the consequences of being found guilty at trial. He explained that the State refused to dismiss the case so Applicant's only option was to proceed to trial and be found "not guilty."
> Applicant has attached "Exhibit A" to his application which is a portion of the reporter's record. Apparently, he was being admonished immediately before the jury was brought into the courtroom. Applicant rejected the plea bargain offer of 25 years – the minimum. Applicant did not indicate that he wished to consider the offer or that he had not been presented with the offer prior to it being mentioned prior to jury selection. Further, Applicant has failed to show that the plea offer would have been presented to the court and that the court would have accepted its terms.

*Id.* at 157.

The state court record, as demonstrated in the above factual finding, belies Lopez's conclusory contention that counsel failed to communicate the plea offer to him. The record at trial instead shows that Lopez was aware of – and rejected – the offer. Lopez thus cannot claim that counsel was ineffective for failing to communicate the offer. *See, e.g., United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012) (noting that the Supreme Court has "affirmed this Circuit's case law, holding that the Sixth Amendment protects against, and remedies, the rejection of favorable plea offers for want of effective assistance of counsel" (citing *Lafler v. Cooper*, 566 U.S. ____, 132 S. Ct. 1376 (2012); *Missouri v. Frye*, 566 U.S. ____, 132 S. Ct. 1399 (2012))); *see also Arnold v. Thaler*, 484 F. App'x 978, 980 (5th Cir. 2012) (per curiam) (noting that to show *Strickland* prejudice, *Lafler* requires that a habeas petitioner "show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed (quoting *Lafler*, 132 S. Ct. at 1385; emphasis added by the Fifth Circuit)).

As to the second ground, counsel testified that he "received and reviewed complete Discovery in this case and interviewed and presented and cross-examined at trial appropriate witnesses based on the Discovery and interviewed with [Lopez]." Dkt. No. 11-18 at 161 (further stating that he "filed a Motion to Suppress Statements and

Defendant's Election and Omnibus Pre-Trial Motions"). The state habeas court, in recommending that this ground also be denied, made the following findings:

> The Court does not know what Applicant means when he refers to counsel's failure to have a "preliminary hearing." Counsel states that he was provided with discovery prior to the jury trial commencing. Counsel indicates he interviewed witnesses based on the discovery and his conversations with Applicant. Counsel filed pre-trial motions and a pretrial hearing was conducted.

*Id.* at 157.

Considering these findings and sworn testimony, Lopez has not shown, as to either ground, "that the state habeas court's conclusion[s as to these claims] amounted to an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)).

Alleged Prosecutorial Misconduct [Grounds 3, 4, 5, 6, 7, & 8]

Lopez next contends that the prosecutor committed misconduct in violation of due process by (1) overstepping the judge's authority during voir dire [Ground 3]; (2) misleading the venire panel [Ground 4]; (3) misleading the venire members to accept an improper definition of penetration [Ground 5]; (4) asking the venire panel an improper question [Ground 6]; (5) mischaracterizing the law [Ground 7]; and (6) misstating the law on the definition of sexual assault [Ground 8]. *See* Dkt. No. 3 at 10-15.

All six claims of prosecutorial misconduct are generally based on Lopez's belief that certain remarks by the prosecutor were improper.

-18-

> [But i]mproper remarks by a prosecutor "are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair." *Hughes v. Quarterman*, 530 F.3d 336, 347 (5th Cir. 2008) (citations omitted). "Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or ... the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Id.*; *see also Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008). "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Hughes*, 530 F.3d at 347 (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

*Burkett v. Thaler*, 379 F. App'x 351, 357 (5th Cir. 2010) (per curiam).

> "[And t]he burden is on the habeas petitioner to also show a reasonable probability 'that but for these remarks' the result would have been different." *Nichols v. Scott*, 69 F.3d 1255, 1278 (5th Cir. 1995). In determining whether the habeas applicant has shown a violation of his right to due process, the court should consider whether the improper conduct was persistent or pronounced and/or whether the evidence was insubstantial. *Geiger*, 540 F.3d at 308. "A curative instruction may reduce the risk of prejudice to the defendant." *Hughes*, 530 F.3d at 347.

*Ellis v. Quarterman*, 308 F. App'x 769, 771 (5th Cir. 2009) (per curiam) (internal citation modified); *see, e.g., Greer v. Miller*, 483 U.S. 756, 766 (1987) ("The sequence of events in this case – a single question, an immediate objection, and two curative instructions – clearly indicates that the prosecutor's improper question did not violate Miller's due process rights." (footnote omitted)).

"[T]he appropriate standard of review for such a claim on writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." *Darden*, 477 U.S. at 181 (quotation marks omitted).

None of the state court adjudications as to these six grounds for relief amounts to an unreasonable application of either clearly established federal law (as set out

above) or the facts in light of the evidence presented in the state proceedings. *Cf.*
*Campos v. Thaler*, No. 4:11-cv-761-Y, 2012 WL 1606217, at *8 (N.D. Tex. Apr. 9, 2012),
*rec. adopted*, 2012 WL 1606587 (N.D. Tex. May 8, 2012) ("For the reasons given by the
state court, the prosecutor's remarks, even if improper, were not sufficiently prejudicial
to warrant habeas relief, especially in light of the trial court's curative instruction,
which minimized any harmful effect, and the evidence of defendant's guilt." (citing
*United States v. Rodriguez*, 43 F.3d 117, 124 (5th Cir. 1995))).

Lopez first claims that by mentioning during voir dire that a punishment phase
would follow the determination of guilt or innocence, the prosecutor "over-stepp[ed] the
judge's authority and duties" and thus violated his right to due process. Dkt. No. 3 at
10. As to this claim, the state habeas court found "that the prosecutor did not engage
in misconduct. Trial counsel objected to the prosecutor's statement regarding the third
phase of trial (punishment) and the jury was instructed that the Court would be
determining punishment." Dkt. No. 11-18 at 157. Given the nature of this ground, and
in light of the objection and curative instruction, the state court's determination as to
this ground is not unreasonable.

Lopez next claims that the prosecutor misstated the State's burden as to
reasonable doubt. *See* Dkt. No. 3 at 11. But the state habeas court found "that the
prosecutor's statement regarding the State's burden to prove certain elements beyond
a reasonable doubt did not amount to misconduct. When the statement is read in its
entirety, the prosecutor was really getting to the meaning of beyond a reasonable
doubt. The prosecutor was not limiting the proof required." Dkt. No. 11-18 at 157-58.

Given the proper context of this statement, as shown by the state court's determination, that determination as to this ground also is not unreasonable.

Lopez next contends that the prosecutor "confused and misleaded the voir dire panel with the wrong definition and interpretation of penetration." Dkt. No. 3 at 12. But the state habeas court explained "that the prosecutor also properly explained 'penetration.' Further, the Court instructed the prosecutor to 'use the legal definition' because her example using a marker and its cap could not be seen or 'taken down.'" Dkt. No. 11-18 at 158. Particularly because of the state court's direction to the prosecutor to use the legal definition, the state court's determination as to this ground also is not unreasonable.

Lopez next argues that the prosecutor offered an "improper commitment question in violation of due process: 'can you convict the defendant on the testimony of one witness.'" Dkt. No. 3 at 13. But, as the state habeas court found, his "counsel objected (improper commitment question) to the prosecutor's question regarding proof of the offense by the testimony of one witness," and the "Court then proceeded to ask the jury panel the question." Dkt. No. 11-18 at 158. In light of the objection and the state court's intervention at the time, the state court's determination as to this ground also is not unreasonable.

Lopez next asserts that the prosecutor "mis-characterization of Texas law and violations of the guarantees of the universal verdict" were misconduct. Dkt. No. 3 at 14. As to this ground, the state habeas court explained "that the prosecutor was discussing the 'unanimity clause' when [Lopez's] counsel objected to a

'mischaracterization' of the law. The Court overruled the objection and advised the jury that the prosecutor was speaking about a hypothetical situation. The Court also indicated the prosecutor's statement was not 'improper' but that she was 'giving a hypothetical.'" Dkt. No. 11-18 at 158. Given the proper context of the prosecutor's remark, the state court's determination as to this ground also is not unreasonable.

Finally, Lopez argues that an explanation given by the prosecutor concerning conjunctive pleading versus disjunctive proof was misconduct amounting to a due process violation. *See* Dkt. No. 3 at 15. But, as the state habeas court explained, "[t]he prosecutor did not engage in misconduct by explaining that the 'and' in the indictment was an 'or' – the conjunctive pleading vs. disjunctive proof which the Court explained." Dkt. No. 11-18 at 158. The undersigned also finds this determination as to this ground to not be unreasonable. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (explaining that "alternate pleading of the differing methods of committing one offense may be charged in one indictment"; that, "although the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive"; and that "[i]t is appropriate where the alternate theories of committing the same offense are submitted to the jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted" (internal citations omitted)); *see also Montez v. Thaler*, No. SA-09-CA-805-XR, 2010 WL 3058360, at *5 (W.D. Tex. May 4, 2010), *rec. adopted*, 2010 WL 3058392 (W.D. Tex. Aug. 2, 2010) (applying *Kitchens* to reject a Section 2254 claim concerning an allegedly erroneous jury charge – "while Montez was

charged with inflicting bodily injury by striking and kicking Rivera, it was proper for the jury to be charged that Montez could be found guilty by striking or kicking Rivera").

Allegedly Perjured Testimony [Ground 10]

Lopez further asserts that his conviction was obtained through the "knowingly use of perjured testimony." Dkt. No. 3 at 17. In support of this assertion, he points to the testimony of Claudia Lopez, which he argues "was nothing more, and nothing less, than a big lie," and specifically challenges her testimony that she neither hit nor verbally abused Lopez by relying on other testimony that she did, in fact, hit, slap, and verbally abuse Lopez. *Id.*

"The Due Process Clause of the Fourteenth Amendment forbids the government from knowingly using, or failing to correct, false testimony." *United States v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002) (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 271 (1959)); *see also Isaac v. Cain*, 588 F. App'x 318, 327 (5th Cir. 2014) (per curiam) ("Under *Napue*, 'a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.'" (quoting 360 U.S. at 269; citations omitted).

"To establish a due process violation based on the government's use of false or misleading testimony, a petitioner must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997). But "due process is [ ] implicated by the prosecution's introduction or allowance of false

or perjured testimony [only when] the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements." *United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981) (citations omitted). Thus,

> [w]hen attempting to show perjured testimony, the false or misleading nature of certain testimony cannot be established simply by pointing to contradictory testimony from other witnesses, inconsistencies within a witness's testimony, or conflicts between or among written statements and live testimony. Such matters go only to the weight of the evidence and the credibility of the witness.

*Craig v. Director, TDCJ-CID*, No. 5:07cv167, 2013 WL 4711483, at *14 (E.D. Tex. Aug. 30, 2013) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)).

All Lopez has shown as to this ground is that other testimony contradicts Claudia's testimony. He has therefore not shown that the state habeas court's denial of this claim amounts to an unreasonable application of either clearly established federal law or the facts in light of the evidence presented in the state proceedings. *See* Dkt. No. 11-18 at 158-59 (denying the due process claim as merely a challenge to the witness's credibility).

<u>Extraneous Evidence [Grounds 12, 13, & 14]</u>

Lopez's final three grounds for relief concern the trial court's admission of his brother's testimony as to what Lopez's wife said concerning an extraneous offense [Ground 12] and, relatedly, the admission of extraneous evidence in violation of Texas Rule of Evidence 404(b) [Ground 13] and the trial court's determination that the extraneous evidence was not substantially outweighed by the danger of unfair

prejudice [Ground 14]. *See* Dkt. No. 3 at 19-21.

As another judge of this Court has observed, "[a] federal habeas court will disturb state court evidentiary rulings on habeas review only if they render the trial fundamentally unfair." *Gamble v. Thaler*, No. 4:12-cv-057-A, 2012 WL 2401963, at *7 (N.D. Tex. June 26, 2012) (citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1226 (5th Cir. 1993); *Scott v. Maggio*, 695 F.2d 916, 922 (5th Cir. 1983)). And, with regard to extraneous evidence admitted during the trial of criminal cases like Lopez's,

> [u]nder Texas Code of Criminal Procedure article 38.37, § 2, evidence of extraneous evidence is more often admissible in cases involving sexual assaults of children, notwithstanding Texas's normal rules of evidence. *Kessler v. Dretke*, 137 F. App'x 710, 711-12 (5th Cir. 2005) (per curiam). The admission of such evidence does not violate due process if the state "makes a strong showing that the defendant committed the offense and if the extraneous offense is rationally connected with the offense charged." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

*Id.*

Because the state habeas court's adjudication of these claims is that they were raised and rejected on direct appeal and thus procedurally defaulted, *see* Dkt. No. 11-18 at 159, this Court "looks through" the state habeas decision to the Dallas Court of Appeals's decision as "the last reasoned opinion" issued as to these claims, *see Ylst*, 501 U.S. at 804 n.3 ("Since a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a preexisting procedural default, its effect upon the availability of federal habeas is nil – which is precisely the effect accorded by the 'look-through' presumption."); *see also Leachman v. Stephens*, 581 F.

App'x 390, 395 (5th Cir. 2014) ("a state habeas decision [ ] found that the petitioner's argument[ ] has been 'previously considered and rejected' on direct appeal[, and] ... 'in light of that determination' [this Court should] 'examine the last clear state court decision of any substance'" (quoting *Divers v. Cain*, 698 F.3d 211, 216 (5th Cir. 2012))).

That court's analysis follows:

### Appellant's Brother

In his first point of error, appellant contends the trial court erred by allowing Juan to testify regarding what Claudia Lopez, appellant's wife, told Juan about the alleged extraneous offense.

When reviewing a trial court's ruling admitting evidence, we apply an abuse of discretion standard of review. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). The court does not abuse its discretion as long as its decision to admit evidence falls within the zone of reasonable disagreement. *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

A witness who testifies to another's good character may be cross-examined to test the witness's awareness of relevant "specific instances of conduct." TEX. R. EVID. 405(a); *Wilson v. State*, 71 S.W.3d 346, 350 (Tex. Crim. App. 2002). Character may be proved through either opinion or reputation testimony. *Wilson*, 71 S.W.3d at 350. While reputation witnesses are generally asked "have you heard" questions, opinion witnesses are asked "did you know" questions. *Id.* When a witness presents a picture that the defendant is not the type of person to commit the charged offense, the prosecution may impeach that witness's testimony by cross-examining the witness concerning similar extraneous offenses. *Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002).

Appellant argues Juan's testimony on cross-examination as to what appellant's wife told him regarding the incident with V.M. was based on hearsay and should have been excluded. But the record shows Juan testified on direct that, as a sibling, he had known appellant his entire life, appellant was his closest sibling, and that he had opportunities to see appellant's family interact. Juan then testified that appellant was not the kind of person who would abuse children. It was permissible for the State to cross-examine Juan regarding his awareness of relevant specific

instances of appellant's conduct. *See* TEX. R. EVID. 405(a); *Wilson*, 71 S.W.3d at 350. We cannot say the trial court abused its discretion by overruling appellant's objection. We therefore overrule appellant's first point.

## Extraneous Offense Evidence

In his second point, appellant contends the trial court abused its discretion by admitting the extraneous offense involving V.M. because it was offered as character-conformity evidence solely to prove appellant committed the charged offense against K.A., in conformity with his bad character. Appellant relies on rule 404(b) of the rules of evidence. *See* TEX. R. EVID. 404(b).

A trial court's decision admitting extraneous offense evidence is reviewed under an abuse of discretion standard. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). Rule 404(b) prohibits the admission of extraneous offense evidence to prove an individual's character or to show action in conformity with that character. TEX. R. EVID. 404(b). This limitation is not based on legal relevance; rather, the evidence is inherently prejudicial, has a tendency to confuse the issues, and forces the accused to defend himself against uncharged crimes in addition to the charged offense. *Daggett v. State*, 187 S.W.3d 444, 451 (Tex. Crim. App. 2005); *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972). But extraneous offense evidence may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b). "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Rebuttal of a defensive theory is "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Id.* at 626. A defendant's presentation of a defensive theory in an opening statement, for example, may open the door to the admission of extraneous offense evidence to rebut the defensive theory. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). Extraneous offenses are admissible to rebut defensive theories raised by the testimony of a defense witness during direct examination or a State's witness during cross-examination. *See Daggett*, 187 S.WJd at 453-54; *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App.1996). Furthermore, evidence of extraneous offenses in sexual assault cases is properly admitted under rule 404(b) to rebut a defensive theory of retaliation or fabrication or that the defendant is "the

innocent victim of a 'frame-up' by the complainant or others." *Wheeler*, 67 S.W.3d at 888 n. 22; *see also Bass*, 270 S.W.3d at 563 & n.8. "In such a situation, the extraneous misconduct must be at least similar to the charged one and an instance in which the 'frame-up' motive does not apply." *Wheeler*, 67 S.W.3d at 888 n.22; *see also Dennis v. State*, 178 S.W.3d 172, 179 (Tex. App. – Houston [1st Dist.] 2005, pet. ref'd).

The record shows that, at trial, appellant offered several defensive theories: (a) he was a loving father and not the kind of person who would sexually abuse a child; (b) K.A. fabricated the abuse allegations; and (c) appellant's wife, Claudia, was behind the fabrication of the abuse allegations. We will examine each of these theories.

Beginning with the first theory, defense counsel told the jury during opening statements that appellant "was not an abusive type of person." Juan Lopez, appellant's brother, testified that he had seen how appellant's family interacted, and that appellant was not the kind of person who would abuse children. Rene Lopez, another brother, testified that he had been close to appellant over the previous five years and that appellant was not the kind of person who would sexually abuse children. Appellant testified that he considered K.A. to be his own daughter and "always had a very good father/daughter relationship with her." In his closing argument, defense counsel told the jury that appellant was "not the kind of person that would commit this type of case."

As for appellant's second theory, defense counsel cross-examined K.A. about her communications with the District Attorney's Office, police officers, and a counselor. He asked her whether she was the center of attention during the counseling sessions and whether she enjoyed being the center of attention, and whether Claudia or anyone else told her what to say to the police. In his closing statement, defense counsel stated that Claudia asked K.A. several times whether she had been touched "by a man," and that a child who is repeatedly asked such a question "can come to understand that that's what you want the child to say." Counsel also argued that K .A. enjoyed being the "center of attention" and that K.A.'s interactions with prosecutors, investigators and counselors over a two year period reinforced the child's accusations.

Turning to appellant's third defensive theory, defense counsel began his opening statement by telling the jurors that they would hear testimony about "very turbulent ... family circumstances" involving K.A., and that appellant and Claudia fought "like cats and dogs" from the beginning of their relationship. Appellant's brother, Rene Lopez, testified that

Claudia's emotions "would change pretty quickly from one state to another" – from very happy and smiling to fighting with appellant. He testified that the fighting between appellant and Claudia intensified during the three to four months before appellant's arrest, and that Claudia verbally abused appellant by cursing at him and calling him names. This verbal abuse included calling appellant a "bastard," accusations that he was "not any fucking good anymore," and "things like that." Appellant's son, Jose Sylvestere Lopez, Jr., testified he did not get along with Claudia because she hit and slapped him, and called him names like "dumb" and "weird." He testified that he once saw appellant and Claudia push and shove one another and say "bad words." Claudia accused appellant of spending more time with his son than with K.A., then attacked appellant with a kitchen knife. After Jose, Jr. went to bed, he could hear appellant and Claudia "screaming to each other."

Appellant testified that he had a difficult and turbulent relationship with his wife, and that there were "bad feelings" between them. Appellant said his wife suffered from "mental" problems because she had been physically and psychologically abused by her mother. He attributed some of their marital problems to a disagreement with his wife about her belief in her mother's use of witchcraft. When K.A. was between three-and-a-half and four years old, appellant saw Claudia grab her by the hair and slap her on the face six times because the child had urinated in her clothing. On another occasion, appellant saw Claudia "practically" drag the child by her hair, then "hit her on the back of the head." Appellant intervened to stop Claudia from hitting K.A. Appellant also alleged that Claudia attacked him with a knife several times. He told the jury he saw Claudia verbally abuse his son, Jose, Jr., and that Claudia "always made" his son "feel more inferior" because Claudia believed K.A. was "more intelligent than he is."

In his closing argument, defense counsel said that appellant had been "trying to overcome" a chaotic marital relationship. He argued there were "severe problems" in appellant's marriage "that resulted in violence between [appellant] and his wife where she attacked him with a knife." Defense counsel also noted that Claudia denied ever using violence against anyone, and "on that point Claudia" was "not telling the truth."

Based on this record, the trial court could have reasonably concluded the extraneous offense evidence regarding V.M. was offered to rebut appellant's several defensive theories. The extraneous offense was sufficiently similar to the charged offense to be admissible. Both the extraneous and the charged offense involved underage females that

appellant knew; both individuals were related to appellant's wife; both the extraneous offense and some of incidents involving the complainant occurred at appellant's workplace. Therefore, we cannot say the trial court abused its discretion by overruling appellant's rule 404(b) objection. We overrule appellant's second point of error.

### Probative Value of Extraneous Offense Evidence

In his third point of error, appellant contends the trial court abused its discretion by concluding that the probative value of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice. In his brief, appellant limits his discussion under this issue to Juan Lopez's testimony. We will do the same.

Under rule of evidence 403, relevant evidence of extraneous offenses may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. *See* TEX. R. EVID. 403; *see also Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App.1991) (op. on reh'g) (presumption relevant evidence more probative than prejudicial). In considering a rule 403 challenge, courts must balance (1) the inherent probative force of the evidence, that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation, with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, commonly, an emotional one, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S. W.3d 637, 641-42 (Tex. Crim. App. 2006). We should reverse the trial court's balancing determination "rarely and only after a clear abuse of discretion." *Montgomery*, 810 S.W.2d at 392. In addition, because rule 403 permits the exclusion of admittedly probative evidence, "it is a remedy that should be used sparingly," particularly in "sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App.2009).

The rule 403 factors weigh in favor of admission. The extraneous offense evidence was probative to rebut appellant's defensive theories that appellant was not the type of person who would sexually abuse a child, that the abuse allegations were fabricated, and that appellant's wife was

behind the fabrication. Juan testified directly that appellant was not the type of person who would abuse a child. The State's cross-examination regarding whether he was aware that appellant had been accused of abusing V.M., an underage girl, was probative in order to challenge Juan's testimony and rebut appellant's defensive theories. Moreover, the State's need for such evidence was considerable. Although there was physical evidence of abuse, there was no DNA evidence linking appellant to the instant offense. *See Newton v. State*, 301 S.W.3d 315, 320 (Tex. App. – Waco 2009, pet. ref'd) (State's need for evidence was "considerable" because there were no eyewitnesses or physical evidence available to corroborate complainant's testimony, and State needed to rebut appellant's claim of fabrication). We see little indication the extraneous offense evidence confused or distracted the jury from the main issues. The extraneous offense evidence involved a single incident. The testimony in question was relatively brief and less graphic than the facts pertaining to the State's case-in-chief. The trial court gave the jury a limiting instruction. We cannot say the trial court abused its discretion by concluding that the probative value of the extraneous offense evidence was not outweighed by the danger of unfair prejudice. We overrule appellant's third point.

*Lopez*, 2013 WL 2145962, at *2-*6.

Upon careful review of the thorough analysis of the Dallas Court of Appeals, the undersigned finds that Lopez has not shown that the applicable determinations made by that court, affirming the evidentiary rulings of the trial court, constitute unreasonable applications of clearly established federal law or that this Court should take the extraordinary step of disturbing the state trial court evidentiary rulings on federal habeas review because those rulings rendered Lopez's trial fundamentally unfair.

## Recommendation

Lopez's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 21, 2016

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE